IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOS SHAKYA,<br><br>     Plaintiff,<br><br>v.<br><br>SPCA OF WESTCHESTER, INC.<br><br>     Defendant. | Complaint No. 7:21-cv-616 |

**PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the New York State Human Rights Law, N.Y. Exec. Law §290, et seq. ("NYSHRL") and New York City Human Rights Law § 8-108, et seq. ("NYCHRL").

**PARTIES**

2. Plaintiff Mx. Jos Shakya is a citizen of the United States and resident of Westchester County, New York.

3. Mx. Shakya is a nonbinary and masculine or non-conforming transgender person, who uses the singular pronouns "they" and "them" or "he" and "him" to refer to themselves.

4. The singular pronouns "they" and "them" are used in this Complaint to refer to Mx. Shakya. References to "they" and "them" in regard to Mx. Shakya refer to Mx. Shakya alone, unless otherwise stated.

5. "Mx." is an honorific equivalent to Mr. or Ms. but not specific to a gender, and is the honorific preferred by the Plaintiff.

6. Defendant SPCA of Westchester, Inc. is a nonprofit corporation organized and existing under the laws of the State of New York.

7. At all relevant times, Defendant SPCA of Westchester, Inc. ("SPCA") has continuously been doing business in the State of New York and has continuously employed over fifteen (15) employees.

8. At all relevant times, Defendant SPCA has continuously been an employer as that term is defined in N.Y. Exec. Law §292.5.

9. At all relevant times, Defendant SPCA has continuously been a person, employer and covered entity within the meaning of New York City Human Rights Law § 8-102.

## PROCEDURAL HISTORY

10. On or about October 23, 2020, Plaintiff Mx. Shakya filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964.

11. On information and belief, the EEOC provided Defendant SPCA with notice of the charge of discrimination.

12. On or about October 26, 2020 the EEOC issued a Notice of Right to Sue letter to Plaintiff Mx. Shakya.

13. Plaintiff took all necessary steps to exhaust their administrative remedies.

14. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act of 1964 and pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

16. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal claims.

17. Venue is proper in the United States District Court for the Southern District of New York pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful practices are alleged to have been committed within the jurisdiction of the Southern District of New York.

## FACTS

**Background**

18. Plaintiff Mx. Shakya is a citizen of the United States.

19. Mx. Shakya is a resident of Westchester County, New York.

20. Plaintiff was employed by SPCA of Westchester, Inc. from December 2018 until their constructive discharge on June 25, 2020.

21. Their position was as kennel staff.

22. Their job duties included assisting the kennel manager with animal care, maintenance of the kennel and assisting clients.

23. They were hired for part-time employment, approximately 25 hours a week.

24. Plaintiff shared their gender identity and pronouns with SPCA management at their interview.

25. At all relevant times, Plaintiff's partner Ari, who is a transgender man, worked for Defendant at the same worksite as Plaintiff.

**Harassment & Hostile Work Environment**

26. On or about August 13, 2019, a new kennel staff member named Eymi was hired.

27. That afternoon, Plaintiff was in the kennel office space with Eymi while no other members of staff were present.

28. Plaintiff had never met Eymi prior to that morning.

29. Eymi confronted Plaintiff about their partner having referred to them with male pronouns.

30. Her tone was aggressive.

31. Plaintiff told her that male or nonbinary pronouns were the pronouns that reflected their gender.

32. Eymi responded that she "didn't really get it" and informed Plaintiff that she was bisexual, but "didn't know many gay people".

33. The discussion of sexual orientation was unwelcome to Mx. Shakya.

34. She then asked Plaintiff's gender identity and demanded to know if they were transgender.

35. Plaintiff told her that they were transgender and non-binary.

36. She again said, "but I don't really get it."

37. Plaintiff indicated to her that they were uncomfortable with the conversation.

38. In spite of this, Eymi continued to make inappropriate comments about Plaintiff's gender identity and gender expression.

39. Mx. Shakya attempted to end the conversation by explaining their gender identity and non-binary status.

40. Eymi continued to interrogate Mx. Shakya, asking what kind of genitals they had.

41. Mx. Shakya was visibly upset by this and refused to answer the question.

42. Eymi ignored Mx. Shakya's discomfort and asked about their genitalia several more times.

43. These comments were unwelcome to Mx. Shakya.

44. A reasonable transgender person would find these comments hostile and abusive.

45. After some time, Mx. Shakya's partner Ari re-entered the room.

46. Eymi then abruptly ended the conversation and left, indicating she was aware that her behavior was inappropriate.

47. Plaintiff went to the office of the Operations Manager, Sofia Rocha, to make a complaint.

48. Ms. Rocha was not at work that day, so Plaintiff went to the office again to speak to her the following morning.

49. Plaintiff requested that Ms. Rocha keep their complaint confidential due to the sensitive nature and the potential for exacerbating the harassment.

50. Plaintiff described Eymi's harassment and inappropriate behavior and indicated their discomfort.

51. Ms. Rocha told Mx. Shakya that Eymi was "a good person" who "didn't mean any harm."

52. This was irrelevant to the fact that Plaintiff had been harassed.

53. The dismissal of Plaintiff's complaint of harassment indicates hostility on the part of Ms. Rocha to Plaintiff's gender.

54. Ms. Rocha told Plaintiff that the only solution to their concerns was either to confront Eymi or talk to their manager, Bill Howard.

55. Mx. Shakya felt unsafe confronting Eymi, and believed that her behavior indicated that they were at risk of further sexual harassment if they confronted her.

56. Mx. Shakya instead raised the issue with Mr. Howard, and again described the harassment and Eymi's repeated questions about their genitals.

57. Mr. Howard's response was "you could have just said no."

58. Plaintiff did not take the issue further at this time, recognizing that management did not intend to take prompt and effective action to address it.

59. Plaintiff later found out through co-workers stat Ms. Rocha had disclosed the details of their complaint about Eymi, in spite of their request for confidentiality.

**Retaliation and Constructive Discharge**

60. Due to the failure of management to take prompt and effective action to address the harassment, Plaintiff attempted to minimize the risk of further harassment by avoiding working with Eymi directly.

61. On days where Mx. Shakya was scheduled to work with Eymi, their partner Ari would take Mx. Shakya's hours and they would take his.

62. For several months, Plaintiff successfully avoided being scheduled with Eymi as a result of exchanging hours.

63. On information and belief, management took note of this and began to schedule Plaintiff at times when Eymi would not be working.

64. In spite of this, Eymi continued to express hostility to Plaintiff's gender identity.

65. Eymi frequently discussed Plaintiff with co-workers in a disparaging way.

66. She would routinely misgender Plaintiff in conversations with others and when speaking to Plaintiff, using she/her pronouns and referring to Plaintiff as female.

67. This persisted even after numerous corrections, suggesting it was deliberate and intended to harass and humiliate Mx. Shakya.

68. Plaintiff was made aware of her hostility to their gender because of comments from other co-workers.

69. The awareness that they were being subjected to comments and gossip in the workplace because of their sex caused Plaintiff significant emotional distress.

70. Nonetheless Plaintiff continued to perform their job due to their successful efforts to avoid Eymi.

71. In early June 2020, the SPCA facility relocated to a new space due to renovations.

72. On June 9, June 10 and June 11 of 2020, Plaintiff was scheduled to work with Eymi after approximately ten months of successful avoidance.

73. Plaintiff contacted Ms. Rocha and told her it was unacceptable for them to have to work with Eymi.

74. Plaintiff again raised the issue of harassment with Ms. Rocha, and noted that although time had passed it had never been resolved and the harassment was ongoing.

75. Ms. Rocha dismissed Plaintiff's statements and responded that "everyone has to work together at some point."

76. Mx. Shakya told Ms. Rocha that this was not an acceptable solution as Eymi continued to be hostile to their gender identity.

77. Ms. Rocha retorted that if Plaintiff had an issue with the scheduling, they could "take it to HR."

78. Plaintiff then raised their complaint with Joanne Witmyer, the human resources manager for SPCA of Westchester.

79. Plaintiff told Ms. Witmyer about the ongoing harassment from Eymi, the issue with scheduling and the failure of Ms. Rocha to address their complaint.

80. Ms. Witmyer was visibly upset about Plaintiff's situation and assured Plaintiff that action would be taken.

81. Ms. Witmyer told Plaintiff that she would raise the issue with Shannon Laukhuf, the Executive Director.

82. Plaintiff waited for over two weeks with no response from either Ms. Laukhuf or Ms. Witmyer.

83. During this time Plaintiff worked with Eymi, who ignored them and avoided them.

84. On information and belief, Eymi was instructed to avoid Plaintiff by Ms. Rocha.

85. This was not constructive or conducive to a functional work environment.

86. This also did nothing to address the underlying harassment, which persisted.

87. Plaintiff's anxiety and depression resulting from the hostile work environment continued to get worse as a result.

88. After two weeks with no further communication, Plaintiff contacted Ms. Witmyer again.

89. Ms. Witmyer told them "it's being taken care of."

90. In spite of this, Plaintiff received no further communication on the issue.

91. The discrimination continued, with Eymi ignoring Plaintiff and Plaintiff having to again reschedule their work hours to avoid working with Eymi.

92. Plaintiff was subsequently informed by their co-workers that Ms. Witmyer had told other employees that Ms. Laukhuf was aware of the issue and had decided not to address it, in the hopes that it would be resolved without further action.

93. This decision not to address the harassment was never communicated to Plaintiff directly.

94. The failure of Ms. Laukhuf to take any action indicates hostility to Plaintiff's gender.

95. On information and belief, Ms. Laukhuf believed that Plaintiff would ultimately resign, and that would allow SPCA to avoid taking action to address the harassment.

96. Plaintiff contacted Ms. Rocha and requested to discuss the issue again on June 25, 2020.

97. In spite of this request, Ms. Rocha did not come to work on that date.

98. Instead she contacted Mx. Shakya and told them if they wanted to speak to her, they would have to contact her by telephone the following day.

99. At this point Plaintiff had gone over 10 months without prompt and effective action taken to address the harassment, and understood that management had no intention to take such action.

100. Plaintiff told their manager, Mr. Howard that they were leaving, and that due to SPCA's unwillingness to take action taken to resolve the issue, it would be their last day of work.

101. On June 26, 2020, Plaintiff's partner Ari went to work and spoke to Ms. Rocha about the involuntary resignation.

102. She responded that Plaintiff had "put her in a very tough position" and that Eymi had "done everything right since Day One".

103. She indicated that Plaintiff had not behaved appropriately in how they had complained.

104. This was untrue and offensive.

105. A reasonable transgender person would find this offensive.

106. Ms. Rocha also told him there was "no evidence", and said that "it was like a year ago, what do you want me to do about it?"

107. Ultimately Plaintiff's partner also resigned his position as a result of SPCA of Westchester's failure to address the hostile work environment.

108. On July 6, 2020. Plaintiff received a phone call from Ms. Witmyer to discuss their involuntary resignation.

109. She repeatedly told Plaintiff that "at the SPCA we don't discriminate."

110. Plaintiff told her that this statement did not reflect their experience.

111. This statement betrayed the fact that Plaintiff's complaints were not being appropriately addressed.

112. The failure of management to take Plaintiff's complaints seriously prolonged and exacerbated the hostile work environment.

113. Plaintiff experienced a hostile work environment at work because of their sex.

114. They made complaints regarding harassment, which were ignored or dismissed.

115. As a result of the discrimination, the hostile work environment and the adverse action taken against them on the basis of sex and in retaliation for my opposition to discrimination, I found myself in an environment so hostile to my gender that no reasonable person would continue in such an environment.

116. For this reason, they submitted their resignation on June 25, 2020.

117. This involuntary resignation amounts to a constructive discharge by Defendant.

**CAUSES OF ACTION**
**COUNT 1**
**42 U.S.C. §2000e, et seq.**
**Hostile Work Environment Because of Sex**

118. Plaintiff Mx. Shakya incorporates by reference the preceding paragraphs as if fully set forth herein.

119. Plaintiff is a member of a protected category with regard to their sex.

120. Defendant SPCA's managers initiated a campaign of harassment and discrimination against Mx. Shakya on the basis of sex, and adopted adversarial attitudes and hostile demeanors by ignoring Mx. Shakya's complaints about harassment by their co-workers, and by actually participating in the conduct giving rise to their claim.

121. The harassment was severe or pervasive such as to alter the terms and conditions of Mx. Shakya's employment.

122. The effects of the hostile environment alleged herein were felt by Mx. Shakya daily.

123. Many events contributing to this hostile work environment occurred within the 300-day period prior to Mx. Shakya's first EEOC charge.

124. Mx. Shakya perceived the working environment to be abusive or hostile.

125. A reasonable transgender person in Mx. Shakya's circumstances would consider the working environment to be abusive or hostile.

126. Defendant was on notice of the hostile work environment and did not undertake prompt and effective efforts sufficient to address it, as detailed herein.

127. This hostile environment unreasonably interfered with Mx. Shakya's ability to perform their job duties, by disrupting their relationship to Defendant SPCA and its management, by the unreasonable criticism and scrutiny of Mx. Shakya's gender which flowed directly from Defendant SPCA's failure to take prompt and effective action to stop the hostile work environment, by Mx. Shakya's need to spend time on otherwise unnecessary grievance processes and other means of seeking relief, and their reasonable fear for their safety, amongst other reasons, and created working conditions intolerable to a reasonable person.

128. As a direct and proximate result of Defendant's unlawful discrimination, Mx. Shakya incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to their reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Defendant's unlawful hostile work environment.

129. By engaging in the conduct described above, Defendant SPCA discriminated against Mx. Shakya intentionally, knowingly or recklessly with regard to Mx. Shakya's federally protected rights, for which Plaintiff seeks punitive damages.

**COUNT 2**
**42 U.S.C. §2000e, et seq.**

**Constructive Discharge Because of Sex**

130. Plaintiff Mx. Shakya incorporates by reference the preceding paragraphs as if fully set forth herein.

131. Mx. Shakya is a member of a protected category with regard to sex.

132. The effect of Defendant SPCA's acts complained of above was to create an intolerable work environment.

133. Mx. Shakya perceived the working environment to be intolerably abusive or hostile.

134. A reasonable transgender person in Mx. Shakya's circumstances would consider the working environment to be intolerably abusive or hostile.

135. Defendant SPCA was on notice of the hostile work environment, including actual notice by means of complaints made by Mx. Shakya to Defendant as detailed herein.

136. The effect of the intolerable work environment was such that Mx. Shakya's resignation was not voluntary and amounts to a constructive discharge by Defendant SPCA.

137. As a direct and proximate result of Defendants' unlawful constructive discharge, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, physical injury, damage to their professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Defendants' discrimination.

138. By engaging in the conduct described above, Defendant SPCA caused Mx. Shakya's constructive discharge by creating an intolerable work environment intentionally, knowingly or recklessly with regard to Mx. Shakya's federally and state protected rights, for which Plaintiff seeks punitive damages.

**COUNT 3**
**New York State Human Rights Law, N.Y. Exec. Law §290 et seq.**

**Hostile Work Environment Because of Sex and/or Gender Identity**

139. Plaintiff Mx. Shakya incorporates by reference the preceding paragraphs as if fully set forth herein.

140. Plaintiff is a member of a protected category with regard to their sex and/or gender identity.

141. Defendant SPCA's managers initiated a campaign of harassment and discrimination against Mx. Shakya on the basis of sex, and adopted adversarial attitudes and hostile demeanors by ignoring Mx. Shakya's complaints about harassment by their co-workers, and by actually participating in the conduct giving rise to their claim.

142. This conduct rose above the level of what a reasonable victim of discrimination with the same protected characteristic would consider petty slights or trivial inconveniences.

143. The effects of the hostile environment alleged herein were felt by Mx. Shakya daily.

144. Many events contributing to this hostile work environment occurred within the one-year period prior to Mx. Shakya's first EEOC charge.

145. Mx. Shakya perceived the working environment to be abusive or hostile.

146. A reasonable transgender person in Mx. Shakya's circumstances would consider the working environment to be abusive or hostile.

147. Defendant was on notice of the hostile work environment and did not undertake prompt and effective efforts sufficient to address it, as detailed herein.

148. This hostile environment unreasonably interfered with Mx. Shakya's ability to perform their job duties, by disrupting their relationship to Defendant SPCA and its management, by the unreasonable criticism and scrutiny of Mx. Shakya's gender which flowed directly from Defendant SPCA's failure to take prompt and effective action to stop the hostile work

environment, by Mx. Shakya's need to spend time on otherwise unnecessary grievance processes and other means of seeking relief, and their reasonable fear for their safety, amongst other reasons, and created working conditions intolerable to a reasonable person.

149. As a direct and proximate result of Defendant's unlawful discrimination, Mx. Shakya incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to their reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Defendant's unlawful hostile work environment.

150. By engaging in the conduct described above, Defendant discriminated against Mx. Shakya intentionally, knowingly or recklessly with regard to their federally and state protected rights, for which Plaintiff seeks punitive damages.

**COUNT 4**
**New York State Human Rights Law, N.Y. Exec. Law §290 et seq.**
**Constructive Discharge Because of Sex and/or Gender Identity**

151. Plaintiff Mx. Shakya incorporates by reference the preceding paragraphs as if fully set forth herein.

152. Mx. Shakya is a member of a protected category with regard to sex and/or gender identity.

153. The effect of Defendant SPCA's acts complained of above was to create an intolerable work environment.

154. Mx. Shakya perceived the working environment to be intolerably abusive or hostile.

155. A reasonable transgender person in Mx. Shakya's circumstances would consider the working environment to be intolerably abusive or hostile.

156. Defendant SPCA was on notice of the hostile work environment, including actual notice by means of complaints made by Mx. Shakya to Defendant as detailed herein.

157. The effect of the intolerable work environment was such that Mx. Shakya's resignation was not voluntary and amounts to a constructive discharge by Defendant SPCA.

158. As a direct and proximate result of Defendants' unlawful constructive discharge, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, physical injury, damage to their professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Defendants' discrimination.

159. By engaging in the conduct described above, Defendant SPCA caused Mx. Shakya's constructive discharge by creating an intolerable work environment intentionally, knowingly or recklessly with regard to Mx. Shakya's federally and state protected rights, for which Plaintiff seeks punitive damages.

## COUNT 5
## NYCHRL § 8-107, et seq.
### Hostile Work Environment Because of Sex and/or Gender Identity

160. Plaintiff Mx. Shakya incorporates by reference the preceding paragraphs as if fully set forth herein.

161. Mx. Shakya is a member of a protected category with regard to sex and/or gender identity.

162. Defendant SPCA's managers initiated a campaign of harassment and discrimination against Mx. Shakya on the basis of sex, and adopted adversarial attitudes and hostile demeanors by ignoring Mx. Shakya's complaints about harassment by their co-workers, and by actually participating in the conduct giving rise to their claim.

163. Mx. Shakya was targeted for harassment and subjected to a hostile work environment because of sex and/or gender identity in violation of the New York City Human Rights Law, New York City Administrative Code § 8-107, et. seq.

164. Mx. Shakya perceived the working environment to be abusive or hostile.

165. A reasonable transgender person in Mx. Shakya's circumstances would consider the working environment to be abusive or hostile.

166. The harassing conduct rose above the level of what a reasonable victim of discrimination with the same protected characteristic would consider petty slights or trivial inconveniences.

167. Defendant SPCA is directly liable for the deprivation of Mx. Shakya's rights by exercising its authority to allow, create and perpetuate a hostile work environment based on sex and/or gender identity.

168. Defendant SPCA aided and abetted in the deprivation of Mx. Shakya's rights because of discrimination against them by actually participating in the conduct giving rise to their claim for hostile work environment.

169. This hostile environment unreasonably interfered with Mx. Shakya's ability to perform their job duties, by disrupting their relationship to Defendant SPCA and its management, by the unreasonable criticism and scrutiny of Mx. Shakya's gender which flowed directly from Defendant SPCA's failure to take prompt and effective action to stop the hostile work environment, by Mx. Shakya's need to spend time on otherwise unnecessary grievance processes and other means of seeking relief, and their reasonable fear for their safety, amongst other reasons, and created working conditions intolerable to a reasonable person.

170. As a direct and proximate result of Defendant SPCA's unlawful discrimination, Mx. Shakya has incurred damages including but not limited to lost wages, humiliation, loss of

enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

171. By engaging in the conduct described above, Defendant SPCA discriminated against Mx. Shakya with willful or wanton negligence, or recklessness or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, with regard to Mx. Shakya's protected rights under NYCHRL § 8-107, for which Plaintiff seeks punitive damages.

## COUNT 6
## NYCHRL § 8-107, et seq.
## Constructive Discharge Because of Sex and/or Gender Identity

172. Plaintiff Mx. Shakya incorporates by reference the preceding paragraphs as if fully set forth herein.

173. Mx. Shakya is a member of a protected category with regard to sex and/or gender identity.

174. The effect of Defendant SPCA's acts complained of above was to create an intolerable work environment.

175. Mx. Shakya perceived the working environment to be intolerably abusive or hostile.

176. A reasonable transgender person in Mx. Shakya's circumstances would consider the working environment to be intolerably abusive or hostile.

177. Defendant SPCA was on notice of the hostile work environment, including actual notice by means of complaints made by Mx. Shakya to Defendant as detailed herein.

178. The effect of the intolerable work environment was such that Mx. Shakya's resignation was not voluntary and amounts to a constructive discharge by Defendant SPCA.

179. As a direct and proximate result of Defendants' unlawful constructive discharge, Plaintiff incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of

life, emotional distress, physical injury, damage to their professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Defendants' discrimination.

180. By engaging in the conduct described above, Defendant SPCA caused Mx. Shakya's constructive discharge by creating an intolerable work environment intentionally, knowingly or recklessly with regard to Mx. Shakya's federally and state protected rights, for which Plaintiff seeks punitive damages.

## MANDATORY RECOVERY OF ATTORNEY FEES AND COSTS

181. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

182. Plaintiff is mandatorily entitled to recover their attorneys' fees and costs pursuant to provisions of Title VII, N.Y. Exec. § 297(10) and NYCHRL § 8-120.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Declare that the acts, practices, and omissions complained of herein are unlawful and violate Title VII, NYSHRL § 296, et seq., and NYCHRL § 8-107, et seq.

B. Permanently enjoin Defendants and all persons in active concert or participation with them from engaging in the unlawful conduct of discriminating against employees based on sex and/or gender, including non-binary identity, or who oppose discrimination against them or participate in investigations regarding discrimination against them;

C. Order Defendant SPCA to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for such employees, and which eradicate the effects of Defendant SPCA's past and present unlawful employment practices;

D. Order Defendant to re-hire Plaintiff and restore them to their job with back benefits, retirement contributions etc., and to make them whole;

E. Order other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

F. Direct Defendant to pay for Mx. Shakya's past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation;

G. Direct Defendant to pay Plaintiff back pay;

H. Award Plaintiff's attorneys' fees, costs, and disbursements as provided by law;

I. Direct Defendant to pay Plaintiff punitive damages; and

J. Award such additional relief as justice may require.

Dated: January , 2021.

Respectfully submitted,

/s/ Jillian T. Weiss
Jillian T. Weiss, Esq.
Law Office of Jillian T. Weiss, P.C.
442 15th Street No. 1R
Brooklyn, NY 11215
(845)709-3237
Fax (845) 684-0160
jweiss@jtweisslaw.com

*Attorney for the Plaintiff*